Eric **STEINER**, M.D., Plaintiff–Appellant,

v.

**MINNESOTA LIFE INSURANCE COMPANY**, a foreign corporation; **Tim Schloesser**; and **Larry Norlin**, Defendants–Appellees.

No. 01CA1670.

Colorado Court of Appeals,
Div. A.

Nov. 7, 2002.

Rehearing Denied Jan. 2, 2003.

Certiorari Granted May 27, 2003.

Elzi Pringle & Gurr, Bruce D. Pringle, Denver, Colorado; Salmon, Lampert & Clor, P.C., John G. Salmon, Brian J. Lampert, Englewood, Colorado, for Plaintiff–Appellant.

Welborn Sullivan Meck & Tooley, P.C., William R. Rapson, Stephen A. Bain, Denver, Colorado, for Defendant–Appellee Minnesota Life Insurance Company.

Cockrell, Quinn & Creighton, Richard M. Foster, Denver, Colorado, for Defendants–Appellees Tim Schloesser and Larry Norlin.

Opinion by Chief Judge HUME.

Plaintiff, Eric Steiner, M.D., appeals the judgment dismissing his breach of contract, bad faith, and outrageous conduct claims against defendants, Minnesota Life Insurance Company and its agents, Larry Norlin and Tim Schloesser, and awarding costs in favor of defendants. We affirm.

Plaintiff, an anesthesiologist, entered into a disability insurance contract with Minnesota Life, through agents Norlin and Schloesser in 1991. In 1998, plaintiff's alcohol and opiate dependence, together with a panic disorder, rendered him unable to work. Plaintiff underwent over two months of inpatient treatment and has subsequently avoided relapse. Minnesota Life paid benefits to plaintiff for nine months of this period of treatment and recovery, but then determined that

plaintiff was not permanently disabled from resuming work as an anesthesiologist and ceased payments.

Plaintiff sued, alleging that his drug dependence rendered him permanently disabled from working as an anesthesiologist and that he was entitled to prior accrued and future benefits under the policy and in tort.

During his initial deposition, while being questioned on the severity of his abuse and his means of obtaining opiate anesthetics, plaintiff invoked his Fifth Amendment privilege against self-incrimination. Defendants moved for summary judgment, asserting that the answers to those questions had direct bearing on plaintiff's chances of remaining drug-free if he returned to an environment where such drugs were present. The trial court converted the motion into a motion to compel plaintiff's responses, under threat of dismissal with prejudice.

The trial court found that defendants' questions were relevant and proper for purposes of discovery. The court also denied plaintiff's request to allow additional expert witnesses to testify as to the relevancy of defendants' questions. After seeking and receiving a stay of proceedings in the trial court, plaintiff sought writs of prohibition and mandamus from the Colorado Supreme Court, which were ultimately denied.

Shortly before resumption of the deposition, plaintiff moved for a protective order with respect to the deposition answers. At the deposition, plaintiff again refused to answer, prompting a telephone hearing in which the trial court denied the motion for a protective order. Plaintiff then stated that he would again seek relief from the supreme court. Plaintiff did not answer the remaining deposition questions, and the trial court later dismissed the case and awarded costs to defendants. The supreme court eventually denied plaintiff's second petition for writs of prohibition and mandamus.

Plaintiff seeks reversal of the dismissal and the cost awards and contends that: (1) the dismissal violated his Fifth Amendment rights; (2) the trial court erred in dismissing the case while his second petition was pending before the supreme court; and (3) the

trial court abused its discretion in awarding costs to defendants. Because we reject these contentions and affirm, we need not consider plaintiff's additional contention concerning limitation of his potential recovery.

I.

Plaintiff first contends that he is being punished for properly asserting his Fifth Amendment privilege against self-incrimination. We conclude that the dismissal was not an abuse of discretion.

 The privilege applies to civil proceedings, and the parties here do not dispute that it applies to depositions. *See Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1655, 32 L.Ed.2d 212, 215 (1972); *People v. Fisher,* 657 P.2d 922, 928 (Colo.1983); *see also* Colo. Const. art. II, § 18.

Plaintiff argued that answering defendants' deposition questions concerning his abuse of prescription opiates could result in future criminal prosecution, which he seeks to avoid. The trial judge ruled that the questions were relevant and necessary to determine whether plaintiff was disabled from returning to active practice and that because they had not been answered, plaintiff's civil action should be dismissed.

 We review such discovery rulings for abuse of discretion. *See Keybank v. Mascarenas,* 17 P.3d 209, 214–15 (Colo.App.2000).

 Here, plaintiff testified that two other anesthesiologists from Denver had undergone the same inpatient treatment for addiction and had since returned to work. Based on that testimony, we conclude that questions related to the depth and means of plaintiff's addiction, as well as his proclivity to steal the easily accessible narcotics he was addicted to, could be relevant and that the trial court's decision in that regard was not manifestly arbitrary, unreasonable, or unfair. *See Keybank, supra,* 17 P.3d at 215; *see also Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1251 (Colo. 1994).

However, whether the dismissal was proper depends in part on whether plaintiff's answers would have been privileged. It is uncontested that plaintiff asserted his privi-

lege against self-incrimination during the discovery process.

Dismissal of a civil action is allowable when a party willfully violates a discovery order. *See Nagy v. Dist. Court,* 762 P.2d 158, 161 (Colo.1988). In Colorado, however, discovery may be had only on matters that are not subject to privilege. *See* C.R.C.P. 26(b)(1). Accordingly, our analysis must go beyond that of *Nagy* and address the issue of plaintiff's privilege.

### A.

Defendants argue that plaintiff waived the privilege with the answers that he provided and thus was subject to discovery on the issues that precipitated this appeal. We are not persuaded.

Generally, the Fifth Amendment privilege against self-incrimination is waived once the witness asserting it has come forward with information that incriminates him or her. The witness may not thereafter refuse to disclose the relevant details of the offense about which he or she already has provided incriminating information. *See Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344, 349 (1951).

However, if further disclosure would lead to incrimination for other offenses, the witness is not deemed to have waived the privilege. *See In re Seper,* 705 F.2d 1499, 1501–02 (9th Cir.1983).

Here, plaintiff already potentially incriminated himself with respect to his use of marijuana, hallucinogens, and cocaine, as well as the illegal use of opiate narcotics. He did not, however, provide testimony that might incriminate him for stealing the drugs from his patients or the hospitals where he worked, or for knowingly receiving stolen drugs from some undisclosed third party. Thus, additional facts related to his admitted use of these drugs were no longer protected by privilege, but the privilege concerning his means of acquiring narcotics had not been waived by prior disclosure.

### B.

Nonetheless, plaintiff's refusal to answer the deposition questions directly blocked the discovery relevant to the resolution of this dispute, and dismissal is an appropriate remedy. *See Bramble v. Kleindienst,* 357 F.Supp. 1028 (D.Colo.1973); *see also* B.C. Ricketts, Annotation, *Dismissing Action or Striking Testimony Where Party to Civil Action Asserts Privilege Against Self–Incrimination as to Pertinent Question,* 4 A.L.R.3d 545 (1965 & 2002 Supp.). While plaintiff may not be compelled to answer and to forgo his constitutional privilege against self-incrimination, as a matter of due process, defendants must have a reasonable opportunity to rebut plaintiff's case. *See Colo. State Bd. of Med. Exam'rs v. Hoffner,* 832 P.2d 1062, 1066 (Colo.App.1992). The basic requirement of due process is fundamental fairness. *See Watso v. Colo. Dep't of Soc. Servs.,* 841 P.2d 299, 307 (Colo.1992)(considering whether a statutory scheme was sufficiently fair). We agree with the trial court's ruling on this basis.

Thus, typically, a protective order would provide plaintiff with a means to disclose the relevant information without fear of its subsequent use. Plaintiff moved for such a protective order, which the trial court denied. Thereafter, plaintiff sought interlocutory review of that decision from the Colorado Supreme Court. That review was rendered moot by the trial court's dismissal, and plaintiff now seeks our review of the denial.

Rulings on protective orders are reviewed under an abuse of discretion standard. *See Leidholt v. Dist. Court,* 619 P.2d 768, 773 (Colo.1980).

In Colorado, a party seeking a protective order must present the subject information to the court for in camera review. *See Martinelli v. Dist. Court,* 199 Colo. 163, 170, 612 P.2d 1083, 1088–89 (1980)(concerning official information privilege).

Here, during the second deposition, plaintiff asked for a ruling on his motion without presenting any such information to the trial court. Citing that lack of presentation, the trial court denied the protective order, and

we perceive no abuse of discretion in that decision.

## II.

■ Plaintiff next argues that the trial court erred in dismissing the action while his petition concerning the protective order was pending before the Colorado Supreme Court. We find no error.

When plaintiff first sought interlocutory relief from the supreme court, he properly followed C.A.R. 21(g)(1) and filed a motion to stay the proceedings and continue the trial date, pending the supreme court's decision. Following denial of the request for a protective order, plaintiff told the trial court that he would not go forward with the deposition and would also challenge that ruling in the supreme court. This time, however, he did not request a stay in the trial court as required by C.A.R. 21(g)(1).

C.A.R. 21(g)(1) provides that:

The filing of a petition under this rule does not stay any proceeding below or the running of any applicable time limit. If the petitioner seeks a temporary stay in connection with the petition pending the court's determination whether to issue a rule to show cause, a *stay ordinarily shall be sought in the first instance from the court* or tribunal. If a request for stay below is impracticable or not promptly ruled upon or is denied, the petitioner may *file a separate motion* for a temporary stay in the Supreme Court supported by accompanying materials justifying the requested stay.

(Emphasis added.)

This rule is clear, and we need not analyze it further. The trial court plainly had jurisdiction for the dismissal while plaintiff's second request for writs was pending.

## III.

■ Finally, plaintiff asserts that the award of costs to defendants imposes an impermissible penalty on his assertion of his Fifth Amendment privilege, and he requests a hearing on the appropriateness of costs.

We conclude that plaintiff is not entitled to relief.

■ Cost awards are within the discretion of the trial court and are reviewed only for abuse of discretion. *See Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 684 (Colo.1994).

Here, defendants' costs do not appear to be out of line with the costs incurred by plaintiff; each party has been assigned a proportional share of costs from the Judicial Arbiter Group; and the trial court certified that more than four witnesses were required to resolve the dispute. *See* § 13–16–112, C.R.S.2002. We perceive nothing in the record here that indicates the trial court abused its discretion in awarding these costs.

None of these costs rise to the level of an impermissible penalty for asserting Fifth Amendment rights. *Cf. Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977)(election law that would divest state political party officials of office if privilege asserted is unconstitutional); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972)(criminal defendant could not be forced either to testify as first defense witness or otherwise not be allowed to take stand in his own defense); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968)(police officer could not be fired for refusal to waive privilege against self-incrimination in grand jury investigation of police corruption); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967)(impermissible penalty to disbar an attorney who refuses to submit to subpoena duces tecum when information sought is privileged). Here, the costs of discovery were foreseeable, and plaintiff assumed the risk that his claims might not be sustained.

■ Plaintiff further contends that Minnesota Life filed its revised bill of costs beyond the statutory deadline. However, C.R.C.P. 121 § 1–22(1) also allows the bill to be filed "within such greater time as the court may allow." *See Koontz v. Rosener,* 787 P.2d 192, 199 (Colo.App.1989).

Furthermore, we deny plaintiff's request for a hearing with regard to costs, because

he did not request such a hearing in the trial court.

The judgment is affirmed.

RULAND * and PLANK *, JJ., concur.